**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Julia Katharina Stachow, | No. CV-24-03180-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Bharathiraja Nagappan, | |
| Defendant. | |

Plaintiff Julia Stachow asserts a breach of contract claim against Defendant Bharathiraja Nagappan, her former spouse.  Doc. 1.  Plaintiff has filed a motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b).  Doc. 12.  For the reasons stated below, the Court will grant the motion in part and require further briefing on damages.

## I.      Background.

Plaintiff immigrated to the United States from Germany in December 2019 on a temporary visa.  Doc. 1 ¶ 14.  On September 1, 2020, the couple retained an immigration attorney to help secure Plaintiff lawful permanent residence status in the United States.  *Id.* ¶ 15.  The parties submitted the applicable forms to U.S. Citizenship and Immigration Services ("USCIS") – a Form I-130 Petition for Alien Relative, a Form 485 Application to Adjust Status, and a Form I-864 Affidavit of Support.  Docs. 1-1, 1-2, 1-3.  Defendant agreed in the Affidavit of Support to provide Plaintiff with "any support necessary" to ensure her an income of at least 125% of the Federal Poverty Guidelines for her household

size.  Docs. 1 ¶ 31, 1-1 at 7.  USCIS approved the Petition for Alien Relative and the Application to Adjust Status on April 23, 2021, and Plaintiff became a lawful permanent resident of the United States.  Doc. 1 ¶¶ 27-28.

The parties separated in January 2023 and were divorced on July 1, 2024. Doc. 1 ¶¶ 38-39.  Plaintiff claims she has been unemployed since the couple's separation and has not been provided any financial assistance from Defendant as required by his Affidavit of Support.  *Id.* ¶¶ 42-43.

Plaintiff brought this breach of contract action to enforce Defendant's obligations in the Affidavit.  Doc. 1.  After several unsuccessful attempts to serve Defendant with process, the Court authorized Plaintiff to serve Defendant using U.S. certified mail and email.  Docs. 6, 7.  Plaintiff served Defendant on January 31, 2025.  Doc. 8.

Defendant did not respond to the complaint and Plaintiff sought entry of default on February 25, 2025.  Doc. 9.  The Clerk entered default against Defendant two days later. Doc. 10.  On March 19, 2025, Plaintiff informed the Court that the copy of the summons and complaint served via certified mail were returned, but there was no indication the email service was unsuccessful.  Doc. 11.  The same day, Plaintiff filed the present motion for default judgment.  Doc. 12.  Defendant did not move to set aside his default, but has filed a response to Plaintiff's motion on March 20, 2025.  Doc. 16.

## II.    Federal Court Jurisdiction.

Defendant argues that the Court lacks jurisdiction because the amount in controversy is less than $75,000 and the parties are both Arizona residents.  Doc. 16 at 1. But Plaintiff asserts federal question jurisdiction, not diversity jurisdiction.  *See* 28 U.S.C. § 1331; Doc. 1 at 2.  By executing the Affidavit of Support, Defendant agreed to the obligations and legal enforceability set forth in the Immigration and Nationality Act, codified at 8 U.S.C. § 1183a, and "to submit to the jurisdiction of any Federal or State court" any case seeking to enforce the Affidavit of Support.  Doc. 1-1 at 8; *see* 8 U.S.C. § 1183a; *Flores v. Flores*, 590 F. Supp. 3d 1373, 1379 (W.D. Wash. 2022).  The Court has federal question jurisdiction over this case.

1

### III.    Default Judgment.

After the clerk enters default, the district court may enter default judgment pursuant to Rule 55(b)(2).   The court's "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  The Court should consider seven factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether default is due to excusable neglect, and (7) the policy favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Plaintiff asks the Court to enforce Defendant's obligations under the Affidavit of Support.  Doc. 12 at 16-17.  Defendant does not contest the validity of the Affidavit or his legal obligations to Plaintiff, but disputes the amount of damages claimed.  The Court finds that default judgment on liability is appropriate.

#### A.  Prejudice to the Defendants

The first *Eitel* factor weighs in favor of default judgment.  Judgment is appropriate where a defendant fails to answer a complaint because otherwise the plaintiff "would be denied the right to judicial resolution of the claims presented, and would be without other recourse for recovery." *Hawks v. Seery*, No. CV-21-00092-PHX-DGC, 2021 WL 5162536, at *2 (D. Ariz. Nov. 5, 2021).  Plaintiff asserts that Defendant evaded service and chose not to litigate this case after receiving notice.  Doc. 12 at 12.  Defendant refutes the evasion accusations (Doc. 16 at 2), but has not filed a motion to set aside default so he can file an answer and defend this action on the merits.  Without default judgment, Plaintiff likely would have no recourse and would suffer prejudice.

#### B.  Merits of the Claim and Sufficiency of the Complaint

The second and third *Eitel* factors also favor default judgment.  These factors often are "analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Best W. Int'l Inc. v. Ghotra Inc.*, No. CV-20-01775-PHX-MTL, 2021 WL 734585, at *3 (D. Ariz. Feb. 25, 2021) (citation omitted).

Plaintiff's allegations are sufficient to support her breach of contract claim.  For such a claim, a plaintiff must identify a contract, breach, and damages.  *Thunderbird Metallurgical, Inc. v. Ariz. Testing Labs.*, 423 P.2d 124, 126 (Ariz. Ct. App. 1967). Plaintiff pleads that Defendant entered into an enforceable contract with the United States government when he signed the Affidavit of Support and that she is an intended third-party beneficiary.  Doc. 1 ¶¶ 56-57, 59; *see* Doc. 1-1.  She also alleges that she is living below the income threshold that triggers Defendant's obligation to provide support, resulting in economic damages.  Doc. 1 ¶¶ 61-63.  Plaintiff asserts a plausible claim for breach of contract.

### C.  Amount of Money at Stake

Under the fourth *Eitel* factor, the Court considers the amount of money at stake and the seriousness of Defendant's alleged conduct.  *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002).  If the money at stake is disproportionate or inappropriate, default judgment is disfavored.  *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006).  The money at stake in this case is relatively modest — 125% of the poverty line each year since January 2023, less any income Plaintiff received.  Defendant agreed to pay this amount to Plaintiff, if necessary, when he signed the Affidavit of Support.  Doc. 1-1 at 7.  This factor favors default judgment.

### D.  Possibility of Factual Disputes

The fifth *Eitel* factor also favors default judgment.  Defendant has not filed an answer, and there is no factual dispute about the valid and enforceable contract Defendant signed.

### E.  Excusable Neglect

The sixth *Eitel* factor considers whether a defendant's default is due to excusable neglect.  *Eitel*, 782 F.2d at 1472.  Defendant does not seek to file an answer and litigate this case on the ground that he failed to respond to the complaint through excusable neglect. This factor is therefore not relevant.

### F.  Policy Considerations

Default judgment is generally disfavored because "[c]ases should be decided upon their merits whenever reasonably possible." *Id.*  But the mere existence of Rule 55(b), which expressly authorizes default judgment, indicates that this consideration is not dispositive. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  Defendant does not dispute that the Affidavit of Support is valid and enforceable. *See* Doc. 16.  The purpose of such an affidavit is to "prevent the admission to the United States of any alien who 'is likely at any time to become a public charge." *Erler v. Erler*, 824 F.3d 1173 (9th Cir. 2016) (citations omitted).  Enforcing the obligations in such affidavits comports with public policy and favors default judgment.

Weighing the *Eitel* factors, the Court finds that default judgment on Defendant's legal obligations under the Affidavit of Support is appropriate.

## IV.  Damages.

Plaintiff has the burden of proving the amount of her damages. *Nguyen v. Embry Health of Arizona LLC*, No. CV-23-00422-PHX-KML, 2025 WL 1342819, at *4 (D. Ariz. May 8, 2025).  The Court need not accept factual allegations in the complaint when determining damages.  Fed. R. Civ. P. 55(b); *Geddes*, 559 F.2d at 560.  A party in default may present evidence on the question of damages, but may not refute liability. *Rubicon Glob. Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp.*, 226 F. Supp. 3d 1141, 1147 (D. Or. 2016) (citing *Henry v. Sneiders*, 490 F.2d 315 (9th Cir. 1974)).

Defendant is obligated to support Plaintiff at 125% of the federal poverty line. Doc. 1-1 at 7.  Plaintiff shows that the federal poverty line for her situation was $14,580 in 2023 and $15,060 in 2024, making Defendant's support obligation $18,225 in 2023 and $18,825 in 2024, for a total of $37,050.  Doc. 1 at 8.  Plaintiff acknowledges that the amount owed by Defendant is reduced by her annual income each year.  Doc. 12 at 8.  She claims she had no income in 2023, and attaches two W-2s for work in 2024 at Ralph Lauren and MD Helicopters, showing total earnings of $3,631.72.  Docs. 14-1, 14-2.  Subtracting this amount, Plaintiff claims she is entitled to damages of $33,418 for 2023 and 2024, plus

interest.  Docs. 1 at 12, 12 at 9.  She also seeks damages for January 1, 2025 to date, an order of specific performance for future payments, and attorneys' fees.  Doc. 1 at 11-12.

Defendant disputes Plaintiff's damages claims.  He asserts she had income in 2023, pointing to non-cash bank deposits totaling almost $40,000 as discussed in the parties' divorce decree.  Doc. 16 at 2.  Plaintiff responds that the divorce court "may have double-counted a $50,000 loan" from Plaintiff's mother, which does not constitute income (Doc. 17 at 6), and provides the loan agreement between her and her mother as well as her bank statements.  *See* Docs. 18, 18-1, 18-2.  After reviewing the record, it is unclear to the Court which deposits Defendant is referring to and what income source he alleges they are from.

Defendant also asserts that he pays for the mortgage and other expenses on the marital home at around $3,500 a month.  Doc. 16 at 2.  Defendant provides only six months of bank statements to support this claim, but based on the divorce decree, it appears he has been making these payments since the parties' separation in January 2023.  Docs. 1-4 at 3, 18-3 at 2.  Defendant argues that he is entitled to offset payments owed under the Affidavit of Support because Plaintiff continues to reside in the marital home while it remains on the market, and implies that his continued payments on the home fulfill his support obligations.  Doc. 16 at 2.  Plaintiff responds that Defendant asked the divorce court to revise the parties' divorce decree, which ordered the sale of the marital home and 50/50 division of the proceeds.  Doc. 17 at 4.  The divorce court issued a revised decree on June 4, 2025, ordering Plaintiff to vacate the marital home and awarding ownership of the property and associated liabilities to Defendant.  Doc. 21-1 at 2.  But there is nothing in the original decree or the revised decree that states Defendant was required to pay the mortgage on the home from the parties' separation in January 2023 until the revised decree becomes effective on July 15, 2025.  If equity in the marital home is divided 50/50, it follows that mortgage payments should be as well, and Defendant's continued payment of all mortgage liability while Plaintiff continues to reside in the home may constitute support.

Defendant also claims that Plaintiff owes him money under the division of debts in the divorce decree.  Doc. 16 at 3.  But he does not cite any legal authority to suggest the

1   Court should take this into account when assessing damages owed under the Affidavit.

2       Moreover, Defendant argues that he should not be responsible for supporting
3   Plaintiff, who agreed during their divorce proceedings that she could sustain herself if she
4   worked for minimum wage. Doc. 16 at 2. But Plaintiff's earning potential is irrelevant to
5   Defendant's legal obligation under the Affidavit of Support. The Affidavit requires
6   Defendant to provide Plaintiff with any support necessary to maintain her at an income that
7   is at least 125% of the applicable poverty guideline, and provides that the obligation of
8   support ends only under certain specified conditions, none of which have occurred to date.
9   Doc. 1-1 at 7-8; *see also Rimas v. Eugenio*, No. 23-CV-02832-HSG, 2024 WL 1975455,
10  at *4 (N.D. Cal. May 1, 2024) ("While the Ninth Circuit has not opined directly on this
11  issue, the great weight of district and sister circuit authority supports the proposition that
12  'traditional contract defenses' – of which mitigation is one – 'cannot be used to avoid
13  support obligations' arising out of a support affidavit.").

14      The Court cannot determine Plaintiff's damages based on the somewhat incomplete
15  record. Within 20 calendar days of this order, each party shall file a memorandum
16  addressing the issues identified above and providing additional relevant evidence.

17      **IT IS ORDERED:**

18      1.      Plaintiff's motion for default judgment (Doc. 12) is **granted in** part. The
19  Court finds that Defendant had a legal obligation to support Plaintiff in the amount of
20  $18,225 in 2023 and $18,825 in 2024 if Plaintiff was unable to do so herself, and has an
21  ongoing obligation to support her in the amount of 125% of the federal poverty level unless
22  one of the specified terminating events has occurred.

23      2.      The parties shall have until **July 3, 2025** to file memoranda on damages.
24      Dated this 13th day of June, 2025.

25
26
27                                          David G. Campbell
28                                          Senior United States District Judge

7